### DETERMINED IN THE

# FIRST DEPARTMENT

#### AT

## GENERAL TERM,

## November, 1894.*

---

The People of the State of New York ex rel. John W. Good-
win, Relator, *v.* James J. Martin and Others, Commissioners,
etc., Respondents.

*Discharge from the New York police force, based upon an altered resignation — can-
not be justified on the ground that the officer was derelict in his duty — review of the
action of the board by certiorari — certiorari granted after four months is in time.*

The action of the board of police commissioners of the city of New York in
removing a person from the office of roundsman (based upon his resignation,
obtained by duress and fraudulently altered) cannot be justified upon the
ground that such person would have been removed by such board because of
dereliction of duty, even had his so-called resignation not been accepted, in a
case in which he has never been tried upon the charge of neglect of duty.

There is no way in which such a person can review the acceptance by the board of
police commissioners of the city of New York of his resignation, obtained by
duress and fraudulently altered, except by reviewing the refusal of such board
to reconsider their action upon the presentation to it of proof which ought to
have satisfied any reasonable man that such resignation was not his free act
and had never been completed and delivered by him, and was altered after it
came into the possession of his superior officer.

Such refusal of the board of police commissioners of the city of New York may
be reviewed by a writ of certiorari notwithstanding the fact that the writ was
granted and served more than four months after the acceptance of the resigna-
tion of the relator by such board. (Follett, J., dissenting.)

Certiorari issued out of the Supreme Court and attested on the
16th day of February, 1893, directed to James J. Martin, John

---

*The other cases of this term will be found in volume 81 Hun.— [Rep.

McClave, Charles F. MacLean and John C. Sheehan, commissioners composing the board of police of the police department of the city of New York, commanding them to certify and return to the clerk of the county of New York all their proceedings under which they denied the relator's application to rescind their resolution accepting his resignation from the office of roundsman.

On the 29th of June, 1882, the relator was appointed to the position of roundsman on the police force of the city of New York, and served in that capacity until August 13, 1889, when he signed a resignation, of which the following is a copy:

> "Police Department of the City of New York, }
> 4th Precinct, New York, *Aug.* 13, 1889.     }

" *To the Board of Police:*

" Gentlemen — I do hereby resign my office of Rdsman in the Police Department of the city of New York. This act is voluntary upon my part and is of my own free will and accord. It has not been caused by any threat of punishment or act of coercion from my superior officer or any other person connected with the police department.     Very respectfully,

" JOHN W. GOODWIN,

"Witness:                    *Rdsman 4th Precinct.*

" Edward Carpenter, *Captain.*"

On the 14th of August, 1889, the resignation was accepted by the commissioners. In December, 1889, the relator obtained a writ of certiorari (the first) to review the proceedings of the board accepting his resignation, but the writ was dismissed on the ground that his resignation appeared to be regular on its face and was voluntary. (32 N. Y. St. Repr. 543.) In August, 1890, the relator obtained an alternative writ of mandamus, alleging that his resignation was obtained by duress. On this allegation issue was joined, which was tried at the May, 1891, Circuit, before a jury, resulting in the following finding, which was submitted by the court to the jury: " 6. Was the said relator's resignation obtained from him by coercion, force, fear and duress used and brought to bear upon him by his superior officer, Richard F. Magan, sergeant of police, or by any other person or persons connected with the said police department? A. Yes."

On this verdict the Special Term, July 1, 1891, granted a peremptory writ of mandamus requiring the commissioners forthwith to reinstate the relator to his position as roundsman, which order was reversed and the writ dismissed in November, 1891, the court holding that the action of the board could not be reviewed by mandamus. (*People ex rel. Goodwin* v. *MacLean*, 62 Hun, 42.) On the 1st of December, 1891, the relator requested the board to reconsider and rescind its action of August 14, 1889, whereby it accepted his resignation, which request the board refused on the 29th of January, 1892. Its action was reviewed on a writ of certiorari (the second) and reversed in November, 1892 (*People ex rel. Goodwin* v. *Voorhis*, 66 Hun, 88), and an order was entered, from which the following is an extract:

" It is ordered that the proceedings of the respondents and their decision denying relator's said application be, and the same hereby are, in all things, reversed, and the matter sent back to respondents for further action, with instructions to respondents, and said respondents are hereby ordered and directed, to notify the relator within ten days after service upon them of a copy of this order of the time and place at which his application will be heard, and to give relator, upon five days' notice of such hearing to him or his said attorney, Louis J. Grant, an opportunity to present to the said respondents his testimony upon the matters and questions involved in said application."

Upon notice to the relator, and after taking the evidence offered by him and by the corporation counsel, the board adopted on the 7th of February, 1893, the following resolution:

" *Resolved*, that the board of police, after hearing all the evidence upon the application of John W. Goodwin, and after hearing counsel, and after full deliberation, do hereby refuse to reconsider its action of August 14, 1889, in accepting the resignation of Roundsman John W. Goodwin."

On the 16th of February, 1893, the relator obtained this (third) writ of certiorari to review the refusal of the board to reconsider its action of August 14, 1889.

*Louis J. Grant*, for the relator.

*Charles Blandy*, for the respondents.

Van Brunt, P. J.:

I cannot concur with Mr. Justice Follett in the conclusion arrived at by him that the Statute of Limitation has run against the right of the relator to review the action of the police board in refusing to reconsider their action removing him upon his alleged resignation. It was held upon a previous certiorari taken in time, according to the calculation of time by Mr. Justice Follett, that the question as to whether the resignation had been obtained by duress, and had been altered without the consent of the relator, could not be considered upon a certiorari taken to review the act of the police commissioners in removing the relator upon such resignation, for the reason that only the proceedings before the police commissioners could be brought up by such writ, and the question as to the validity of the resignation could not be tried before this court and evidence upon the question not before the police commissioners could not be considered. From that time on, the relator has been endeavoring to have the wrong which was done him by his removal righted; and in every tribunal before which the question as to the validity of this resignation has been brought, it has been found that such resignation was obtained by duress and fraudulently altered, and was of no effect — except by the board of police commissioners; and they have sought to justify the wrong which they did in acting upon this resignation, obtained by duress and fraudulently altered, upon the ground that even if they had not acted upon this so-called resignation they would have removed the relator because of dereliction of duty. Upon this latter charge the relator has never been tried; and it is no defense, when it is established beyond question that the resignation of the relator was obtained by duress and fraudulently altered after he had been prevented from stating upon the resignation the facts in reference thereto, for the respondents to say that if he had not resigned they would have removed him anyhow.

The evidence in this case shows that this resignation was obtained from this relator by threats, and, as already stated, before he finished its signature it was taken away from him and completed without his consent, and this is the paper by force of which he has lost his position on the force. It does not seem to require argument to show that action upon the part of the police department based upon

so fragile a foundation as this can hardly withstand scrutiny. And it is a rather peculiar feature that in the form of resignations which are to be signed by members of the police department when they desire to retire from the force there is printed therein an acknowledgment that the act is voluntary and has not been caused by any threat of punishment or act of coercion from a superior officer, or any other person connected with the police department. It would seem from this that there is a liability that such coercion will be used and resignations procured by threats of punishment, and that in order to anticipate cases of this description the provision was printed in the form of resignation. What influence such a declaration in a printed form could possibly have it is difficult to imagine, for if a person was coerced into signing his resignation he would sign a resignation necessarily in the form prescribed by the department. We might, therefore, consider that we approach a case of this kind with the admission that such a resignation is liable to be the result of coercion upon the part of superior officers.

But it is urged that if the relator is reinstated he gets three and a half years' pay and has not been doing any work. Is that any consideration which can influence this court? If such a result follows, is it not because of the persistent determination upon the part of these commissioners not to do justice to this man, but to deprive him of his office by means of a false paper, and refusing to try him upon any charges over which they had jurisdiction and upon which they so glibly claim that he would have been removed anyhow? If it was so certain that he could have been removed upon those charges, and that they could have been established, why did they not do so instead of insisting upon this fraudulent resignation obtained by coercion and threats?

It has not been thought necessary to discuss the evidence establishing the facts in connection with this resignation, because that has been done repeatedly already; and we have only considered briefly the moral considerations which have been urged in support of the immoral act of removing this man upon this false resignation; and the question of law that the statute has run against him and prohibits him from reviewing the act of the commissioners. As already stated, there was no way in which he could review the acceptance of the resignation except by reviewing their refusal to reconsider their

action, when he presented to them the proof which ought to have satisfied any reasonable man that such resignation was not the free act of the relator, had never been completed and delivered by him and was altered after it came into the possession of his superior officer.

I think the relator should be reinstated and that he should have costs of this proceeding.

O'Brien, J., concurred.

Follett, J. (dissenting):

The determination of an officer or board while exercising judicial or *quasi*-judicial functions cannot be reviewed on a writ of certiorari unless it is granted and served within four months after the determination is made. (Code Civ. Proc. § 2125.) This section is applicable to a review of the action of the board of police in removing an officer from the force, and the writ should be dismissed when it appears on its face that it was not granted within the time limited by the section. (*People ex rel. McNeary* v. *MacLean*, 64 Hun, 205.) However the purpose of this writ may be attempted to be concealed, the ultimate object which the relator seeks to attain by it is the review and reversal (1) of his own act — his resignation — and (2) the acceptance of it by the board of commissioners. The relator executed his resignation August 13, 1889, and it was accepted by the board the next day. We find no evidence in the record affirmatively showing the date when the relator first complained to the board that his resignation was obtained by duress, but we find none showing that he made any complaint prior to December, 1889, when the first writ of certiorari was issued, and the commissioners state in their opinion that he first " questioned his resignation" in December, 1889. There is no evidence that the board did not act in good faith in accepting the resignation, and without notice of any of the matters by which the relator now seeks to invalidate his act, and the unexplained delay of more than four months before the relator sought to repudiate his resignation, which, at most, was only voidable (62 Hun, 43), is inexcusable *laches*.

On the 16th of February, 1893, the writ now before the court was granted, more than three years and a half after the action was taken or determination (if it can be called such) was made which he

seeks to reverse. His present application, by reason of the provision of the section of the Code before cited, is too late. It may be said that the relator does not seek by this writ a review and a reversal of the acceptance of his resignation, but a review and a reversal of the resolution of February 7, 1893. Suppose the board should reconsider its action of August 14, 1889, and refuse to reverse it, it is plain, we think, that the lapse of time would prevent this court from reviewing their determination on a writ of certiorari. To review their action of August 14, 1889, under the form of reviewing their action of February 7, 1893, would be doing indirectly that which the court has no power to do directly. Such a practice would enable persons feeling aggrieved by the determination of boards or officers exercising judicial powers to remain silent until after the time to review their action had expired, and then present a request to the board or officer that their original determination be reconsidered and revoked, and, if the request were refused, to review both determinations under one writ. This procedure would be in violation of the language and the spirit of the Code and the rules of the common law governing the procedure on such writs. Entertaining this view of the case, it becomes unnecessary to determine whether the adjudication under the first writ of certiorari is a bar to these proceedings instituted by the third one. Singularly enough the judgment entered on the first writ is not pleaded nor proved, and we know nothing of its provisions except as gathered from the opinion reported in the 32d volume of the State Reporter, at page 543. It being apparent that by the relator's delay the ultimate relief which he seeks cannot be granted, this writ should be quashed, but without costs to either party.

Procecedings revoked and relator reinstated, with costs.